[Cite as *State v. Mobley*, 2009-Ohio-5434.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

STATE OF OHIO,

   PLAINTIFF-APPELLEE,                     CASE NO. 11-09-01

   v.

JOHN W. MOBLEY,                       O P I N I O N

   DEFENDANT-APPELLANT.

Appeal from Paulding County Common Pleas Court
Trial Court No. CR-08-555

**Judgment Affirmed**

**Date of Decision:  October 13, 2009**

APPEARANCES:

   *Joseph A. Benavidez* **for Appellant**

   *Joseph R. Burkard* **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, John W. Mobley, appeals the judgment of the Paulding County Court of Common Pleas finding him guilty of illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, and possession of drugs. On appeal, Mobley argues that all three of his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence, and that the jury verdict forms were insufficient under R.C. 2945.75 to support his convictions and sentences for illegal manufacture of drugs and illegal assembly or possession of chemicals for the manufacture of drugs. We find that Mobley's convictions were supported by the evidence and were not against the manifest weight of the evidence. Additionally, we find that the verdict form supporting Mobley's conviction for illegal assembly or possession of chemicals for the manufacture of drugs was inadequate under R.C. 2945.75, but the resulting error was harmless. Accordingly, we affirm the judgment of the trial court.

{¶2} In June 2008, the Paulding County Grand Jury indicted Mobley on Count One, illegal manufacture of drugs in violation of R.C. 2925.04(A), a felony of the second degree; Count Two, illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A), a felony of the second degree; and, Count Three, possession of drugs in violation of R.C.

2925.11(A),(C)(1)(a)[1], a felony of the fifth degree. Thereafter, Mobley entered a plea of not guilty to all counts in the indictment.

{¶3} In December 2008, the case proceeded to trial, at which the following testimony was heard.

{¶4} Deputy Mark Butler of the Paulding County Sheriff's Office testified that he received training in methamphetamine including its ingredients and method of production; that methamphetamine is a "Schedule II" drug according to the Ohio Revised Code; that a clandestine methamphetamine laboratory (hereinafter "meth lab") is a secret laboratory used to produce illegal drugs, specifically, methamphetamine; and, that one method of methamphetamine production requires solvent (such as Coleman fuel), lithium (from stripped lithium batteries), pseudoephedrine tablets, oxidizers, acid (such as drain opener), coffee filters, anhydrous ammonia, a heat source to evaporate the mixture, work gloves to handle the anhydrous ammonia to prevent burns, and a reaction vessel where everything is mixed together.

{¶5} Deputy Butler continued that, on May 6, 2008, he executed a search warrant at John Mobley's residence at 17572 County Road 156 in Paulding, Paulding County (hereinafter "the residence"); that Elizabeth Brown was at the residence when he arrived to execute the warrant; that the nature of the search

---

[1] The indictment states that Mobley was charged with violating R.C. 2925.11(A)(1)(C)(1)(a); however, as R.C. 2925.11(A)(1) does not exist, we presume this to be a typographical error, and find Mobley was charged with violating R.C. 2925.11(A),(C)(1)(a)

-3-

warrant was to look for methamphetamine and items used to produce it; that he and several other officers located a meth lab in the basement of the residence; that, in the residence basement, he located a reaction vessel, propane torch, drain opener, a ventilation fan, lithium batteries, a stove filled with burnt lithium batteries, glass tubing, and a laundry basket full of gloves; that, outside of the residence, he located another pile of gloves and multiple burned Coleman fuel cans; that, in the residence office, he located a scale and a blue bag containing coffee filters, green vegetative material, and a white powdery substance in plastic baggies, and instruments used for snorting or smoking drugs, including a box cutter, burnt foils, corroded spoons, a pipe, rolling papers, a mirror, and a tray with white residue; and, that, in the residence dining room, he located a stove containing many empty pseudoephedrine boxes. Deputy Butler further testified that lithium batteries can be used in infrared "night vision" glasses; that he ordered the solvents and oxidizers to be disposed of as hazardous materials without being tested because the Bureau of Criminal Identification and Investigation (hereinafter "B.C.I.") will not take hazardous materials; and, that the gloves were not tested for the presence of anhydrous ammonia.

{¶6} Detective Michael Freeman of the Van Wert City Police Department testified that he received training in clandestine lab safety; that, on May 6, 2008, he assisted the Paulding County Police Department with investigating a meth lab in Paulding County; that the officers located packages of pseudoephedrine in a

camper parked in the driveway of the residence; located foils and other smoking devices; and, located empty pseudoephedrine boxes inside a wood burning stove.

{¶7} Agent Gary Miller of B.C.I. testified that, on May 6, 2008, he assisted the Paulding County Sheriff's Office with investigating a meth lab in Paulding County; that, in the basement of the residence, they located evidence of a former or current meth lab, including stripped lithium batteries, a propane torch, starter fluid, gloves, a cooking pan, drain opener, bleach, a pan covered in a blue substance, which is indicative of anhydrous ammonia being cooked, and a coffee grinder with unground pseudoephedrine pills and white powder on the inside of the grinder; and, that all of the ingredients required to produce methamphetamine were present in the residence, with the exception of anhydrous ammonia.

{¶8} Scott Dobransky, a forensic scientist at B.C.I., testified that he examined the zippered bag containing the white substance and identified it as methamphetamine.

{¶9} Detective Joel Gibson of the Henry County Sheriff's Department testified that, on May 6, 2008, at approximately 3:30 a.m., he investigated a report by Stanley Elevator of an anhydrous ammonia theft in progress at their fertilizer plant; that he located a suspicious vehicle and determined that it was registered to Mobley; that, following a canine search, he located Mobley lying in a field near the crime scene; and, that he also apprehended an individual named Robert Gibson.

{¶10} Elizabeth Brown testified that she and Mobley lived together as boyfriend and girlfriend at the residence from 2004 until June 2008; that no one else lived at the residence; that, during 2008, Mobley gave her money to purchase pseudoephedrine approximately four or five times per month; that she would purchase it, give it to him, and he would "disappear for awhile" and then "come back with product" (trial tr., vol. I, p. 225); that she had access to the basement of the residence while living there, but never manufactured methamphetamine herself; that, when she did laundry in the basement, she often saw jars, drain opener, empty pill boxes, and batteries; that she occasionally conversed with Mobley about methamphetamine production, and he would tell her about things he needed to purchase to produce it, such as drain opener and pills; that she was using methamphetamine while living with Mobley; that, when she purchased pills for Mobley, he would give her half of the methamphetamine he produced, which he weighed on a scale in the residence office; that she had seen Mobley squeeze a substance out of a filter and leave it to dry in a glass tray, which he would scrape off with a box cutter; that Mobley used fabric softener, candles, and incense to cover the smell of the anhydrous ammonia cooking; and, that Mobley would procure anhydrous ammonia approximately once a month.

{¶11} On cross-examination, Brown testified that, when Deputy Butler first approached her, she told him that she did not know anything about a meth lab in the basement; that, after she was charged with offenses herself relating to the

meth lab, she decided to testify against Mobley in exchange for a "deal"; that, at the time she was living with Mobley, she was addicted to methamphetamine and used it approximately three or four times a day; and, that she did not believe her former methamphetamine use had tainted her ability to recollect during that time.

{¶12} After Brown testified, the State rested. Mobley's counsel then moved for acquittal on all counts pursuant to Crim.R. 29, which the trial court denied. Thereafter, Mobley presented the following testimony in his defense.

{¶13} Kenneth Knapp testified that he and Mobley were friends for approximately thirty-five years; that, prior to his arrest, Mobley did "salvage" or "scrapping metal" to make an income (Id. at p. 259); that he had seen Robert Gibson, an acquaintance of Mobley, at Mobley's residence on multiple occasions; that, to his knowledge, Gibson did not live at the residence; that Gibson occasionally went into Mobley's residence when Mobley was not there; that he had been in Mobley's basement; that Gibson asked him on one occasion if he would go with him to get anhydrous ammonia, but Mobley never asked him to do this. Knapp continued that he had been convicted of felonies for trafficking in marijuana and breaking and entering; and, that, when he was in Mobley's basement, he never saw the items associated with methamphetamine production.

{¶14} Jennifer Thomas testified that she was Mobley's sister, and she lived part-time at the residence in May 2008; that only she, Mobley, and Brown lived at the residence during that time; that she had been in the basement of the residence

to do laundry, but never saw any of the items associated with methamphetamine production; that she had never seen Mobley ingest methamphetamine; that Gibson was at the residence "all the time" and came and went as he pleased (Id. at p. 283); and, that Gibson often borrowed Mobley's truck. Thomas continued that she had been convicted of child endangerment because her husband "got busted for dealing" and her name was on the lease (Id. at 286); that the pictures of gloves entered into evidence were Mobley's "working gloves" (Id. at 293); and, that she was "somewhat" aware that Brown was addicted to methamphetamine, but had only seen her use it in Gibson's trailer, and not at the Mobley residence.

{¶15} Mobley testified that he "junks" for a living, or collects scraps; that the pictures entered into evidence depicting items associated with methamphetamine production were not set up as depicted on May 6, 2008; that he was in the residence basement often to burn firewood, do laundry, and turn on the fuses; that, on May 6, 2008, when he was arrested for theft of anhydrous ammonia, Brown dropped him off outside a grain elevator in Henry County because Gibson had called him and told him that his truck had broken down and he needed to pick it up; that law enforcement officers came out with a canine unit after he arrived, so he ran and hid in a field; and, that Gibson came to his residence frequently, even when he was not there.

{¶16} Mobley further testified that he used the laundry detergent and bleach to do laundry; that he used the lithium batteries for his infrared hunting

glasses; that he was aware Brown was addicted to methamphetamine and she used it three or four times per day; that he had previously been convicted of felony domestic violence against his ex-wife and marijuana trafficking; that he had never produced methamphetamine or stolen anhydrous ammonia; and, that he did not know how the items associated with methamphetamine production got into his basement, but hypothesized that Gibson may have had something to do with it because he was frequently in the residence.

{¶17} On cross-examination, Mobley testified that, although he "junked" for a living, he had not filed a tax return or paid taxes in approximately ten years; that, in 2001, he pleaded guilty to felony possession of methamphetamine in Defiance County; that he had nothing to do with hooking up the propane tank to fill it with anhydrous ammonia in Henry County; that the residence office was his office, but that he was not familiar with the scale; that the glassware items and bowls were antiques he had collected; that he was not familiar with the aluminum foil and smoking and snorting devices inside the bowls; that he was not familiar with the fan in his basement window; that he used the propane tank to spray paint cars, which he also did for a living; that the blue bag found in his office containing foil belonged to Gibson; that he kept drain cleaner in the basement to unplug the dryer vent; that he had never burned batteries in his wood stove, and did not know how they got there; that the glassware found in the basement was used for milking cows, and he did not know why it was in the basement; that he did not know how

the pseudoephedrine boxes got into the stove; that he used the propane torch to start fires in the stove because it was easier than using a lighter; that he used the starter fluid to start vehicles; and, that he did not know how a coffee grinder got into his residence because he did not drink coffee.

{¶18} Brown returned to the stand and testified that, in the early morning of May 6, 2008, Gibson and Mobley left together to pick up anhydrous ammonia; that the coffee grinder containing pills, pan covered with a blue substance, blue bag containing filters, cooking pan, pseudoephedrine boxes, and scale were all in the residence and in Mobley's possession prior to execution of the search warrant; and, that Thomas, Knapp, and Mobley had all smoked methamphetamine in her presence.

{¶19} Thereafter, the jury returned verdicts finding the following:

**We, the Jury, find the Defendant, John W. Mobley, GUILTY of Illegal Manufacture of Methamphetamine, as he stands charged in COUNT I of the Indictment.**
**\* \* \***
**We, the Jury, find the Defendant, John W. Mobley, GUILTY of Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, as he stands charged in COUNT II of the Indictment.**
**\* \* \***
**We, the Jury, find the Defendant, John W. Mobley, GUILTY of possession of Methamphetamine, as he stands charged in COUNT III of the Indictment.**

(Dec. 2008 Verdicts Count I, II, and III). Thereafter, the trial court issued an entry in accordance with the jury verdict, finding Mobley guilty of illegal manufacture of methamphetamine in violation of R.C. 2925.04(A), a felony of the second

degree; illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A), a felony of the second degree; and, possession of methamphetamine in violation of R.C. 2925.11(A),(C)(1)(a), a felony of the fifth degree.

{¶20} In January 2009, the trial court found that illegal manufacture of drugs in violation of R.C. 2925.04(A) and illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A) were allied offenses of similar import, and the State elected for the trial court to sentence Mobley on the illegal manufacture of drugs offense. The trial court then sentenced Mobley to a mandatory five-year prison term for illegal manufacture of drugs and a twelve-month prison term for possession of drugs, to be served concurrently for an aggregate five-year prison term.

{¶21} It is from his conviction and sentence that Mobley appeals, presenting the following assignments of error for our review.

### Assignment of Error No. I

**THE TRIAL COURT'S VERDICT THAT DEFENDANT WAS GUILTY OF ILLEGAL MANUFACTURE OF DRUGS, ILLEGAL ASSEMBLY OR POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF DRUGS, AND POSSESSION OF DRUGS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. II*

**APPELLEE'S EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THE VERDICT OF THE TRIAL COURT.**

*Assignment of Error No. III*

**THE VERDICT FORMS AND THE RESULTING ENTRY WERE INSUFFICIENT UNDER O.R.C. 2945.75 TO SUPPORT APPELLANT'S CONVICTIONS AND SENTENCING FOR COUNTS ONE AND TWO OF THE INDICTMENT.**

{¶22} Due to the nature of Mobley's argument, we elect to address his first and second assignments of error together.

*Assignments of Error Nos. I & II*

{¶23} In his second assignment of error, Mobley contends that his convictions for illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, and possession of drugs were not supported by sufficient evidence. In his first assignment of error, Mobley contends that his convictions were against the manifest weight of the evidence. We disagree.

{¶24} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe*, 105 Ohio St.3d 384, 392, 2005-Ohio-2282, citing *State v. Jenks* (1981), 61 Ohio St.3d 259,

superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355. Sufficiency is a test of adequacy, *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, and the question of whether evidence is sufficient to sustain a verdict is one of law. *State v. Robinson* (1955), 162 Ohio St. 486, superseded by state constitutional amendment on other grounds as stated in *Smith*, supra.

**{¶25}** When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.

**{¶26}** Here, Mobley was convicted of one count of illegal manufacture of drugs in violation of R.C. 2925.04(A), one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A), and one count of possession of drugs in violation of R.C. 2925.11(A),(C)(1)(a).

**{¶27}** R.C. 2925.04(A) provides that:

**(A)** **No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.**

**{¶28}** Additionally, R.C. 2925.041(A) provides that:

**(A)** **No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.**

**{¶29}** Finally, R.C. 2925.11(A),(C)(1)(a) provides that:

**(A)** **No person shall knowingly obtain, possess, or use a controlled substance.**
**\* \* \***
**(C) Whoever violates division (A) of this section is guilty of one of the following:**

**(1)** **If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, and hashish, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:**

**(a)** **Except as otherwise provided in division (C)(1)(b), (c), (d), or (e) of this section, aggravated possession of drugs is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.**

**{¶30}** R.C. 2925.01(K) provides that "'possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." The Supreme Court of Ohio has held

-14-

that a person has constructive possession of a thing or substance when he is able to exercise dominion or control over it. *State v. Wolery* (1976), 46 Ohio St.2d 316, 329, certiorari denied (1976), 429 U.S. 932. Circumstantial evidence alone is sufficient to support the element of constructive possession. *Jenks*, 61 Ohio St.3d at 272-73.

{¶31} Here, testimony was heard that investigators discovered in Mobley's residence items associated with methamphetamine production including a reaction vessel, a propane torch, drain opener, a ventilation fan, stripped lithium batteries, glass tubing, multiple pairs of gloves, multiple Coleman fuel cans, a scale, coffee filters, methamphetamine contained in plastic baggies, instruments used for snorting or smoking methamphetamine, multiple empty pseudoephedrine boxes, and a pan covered in a blue substance indicative of anhydrous ammonia being cooked. Additionally, testimony was heard that the only item required to produce methamphetamine that was not discovered in Mobley's residence was anhydrous ammonia, and that Mobley was apprehended while attempting to steal anhydrous ammonia the morning the search was executed. Even further, testimony was heard from Brown that only she and Mobley lived at the residence at the time the items were discovered; that Mobley paid her to purchase pseudoephedrine; that Mobley would take the pills, go into the basement, and come back with methamphetamine; that Mobley told her about things he needed to purchase to produce methamphetamine; that she had seen Mobley weigh methamphetamine on a scale;

and, that Mobley used various items to cover the smell of anhydrous ammonia cooking.

{¶32} Finally, we note that, although Mobley, his friend, and his sister testified that they had never seen many of the items associated with methamphetamine production at the residence, that Gibson was often at the residence, and insinuated that the items may have been his, it is clear that the jury found the law enforcement officers' and Brown's testimony to be more credible. We do not find that the evidence indicated that the jury clearly lost its way, particularly given that it is in the best position to weigh witness credibility. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80.

{¶33} Based upon the evidence presented, we find that Mobley's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence.

{¶34} Accordingly, we overrule Mobley's first and second assignments of error.

*Assignment of Error No. III*

{¶35} In his third assignment of error, Mobley argues that the verdict forms and resulting entry were insufficient under R.C. 2945.75 to support his convictions and sentences on Counts One and Two. Specifically, he argues that the signed jury verdict forms for these counts did not contain the applicable revised code sections, degrees of the offenses, or additional findings of

aggravating factors; and, therefore, pursuant to *State v. Ligon*, 179 Ohio App.3d 544, 2008-Ohio-6085, and *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, the verdict forms support verdicts for only the lowest degrees of the offenses.

**{¶36}** R.C. 2945.75(A)(2) provides that:

> **(A)    When the presence of one or more additional elements makes an offense one of more serious degree:**
> * * *
> **(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present.   Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.**

**{¶37}** In *Pelfrey*, 2007-Ohio-256, at syllabus, the Supreme Court of Ohio held that "[p]ursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense."   Where the verdict form does not contain the degree of the offense or a statement that an aggravating element has been found, R.C. 2945.75(A)(2) directs that the "guilty verdict constitutes a finding of guilty of the least degree of the offense charged." See, also, *Pelfrey*, 2007-Ohio-256, at ¶12.   Finally, the Supreme Court held that the requirements of R.C. 2945.75 "cannot be fulfilled by demonstrating additional circumstances, such as that the verdict incorporates the language of the indictment, or by presenting evidence to show the presence of the aggravated element at trial

or the incorporation of the indictment into the verdict form, or by showing that the defendant failed to raise the issue of the inadequacy of the verdict form." Id. at ¶14; see, also, *State v. Sessler*, 3d Dist. No. 3-06-23, 2007-Ohio-4931, affirmed by *State v. Sessler*, 119 Ohio St.3d 9, 2008-Ohio-3180 (holding that the requirements of R.C. 2945.75 were not met where the verdict form did not contain the degree of the offense or a statement that an aggravating element was found, but purported to relate to the offense as "charged in the indictment").

{¶38} This Court recently applied the Supreme Court's holding in *Pelfrey* to drug trafficking offenses in *Ligon*, 2008-Ohio-6085. In *Ligon*, the defendant was convicted and sentenced for, among other charges, Count One, trafficking in cocaine in violation of R.C. 2925.03(A),(C)(4)(c), a fourth-degree felony; Count Two, trafficking in crack cocaine in violation of R.C. 2925.03(A),(C)(4)(e), a second-degree felony; Count Four, trafficking in crack cocaine in violation of R.C. 2925.03(A),(C)(4)(e), a first-degree felony; and, Count Six, trafficking in cocaine in violation of R.C. 2925.03(A),(C)(4)(d), a second-degree felony. Thereafter, Ligon appealed his convictions and sentences, arguing that the verdict forms used for his convictions for trafficking in drugs were insufficient under R.C. 2945.75 because they lacked jury findings of aggravating elements under R.C. 2925.03. Accordingly, Ligon sought reduction of his convictions to the lowest degree of the offenses. This Court agreed, finding that the jury verdict forms for the drug trafficking convictions failed to state the applicable revised code sections, the

degrees of the offenses, or any indication that aggravating factors were found by the jury (with the exception of one aggravating factor contained in the jury verdict form for Count Four and one for Count Six). Accordingly, pursuant to R.C. 2945.75 and *Pelfrey*, we reduced Ligon's convictions under Counts One and Two to fifth-degree felonies, and under Counts Four and Six to fourth-degree felonies.

**{¶39}** Here, Mobley argues that the verdict forms and resulting entry were insufficient under R.C. 2945.75 to support his convictions and sentencing on Counts One and Two because, he claims, the jury verdict forms for these counts did not contain the applicable revised code sections, degrees of the offenses, or any findings of aggravating factors.

**{¶40}** We agree that the verdict form pertaining to Count Two was insufficient to support the degree of Mobley's conviction; however, we disagree that the verdict form for Count One was insufficient. The verdict form for Count One provided that the jury found Mobley "GUILTY of Illegal Manufacture of Methamphetamine, as he stands charged in COUNT I of the Indictment." R.C. 2925.04(A), prohibiting illegal manufacture of drugs, provides, in pertinent part:

> **(A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.**
> **＊ ＊ ＊**
> **(3) If the drug involved in the violation of division (A) of this section is methamphetamine, the penalty for the violation shall be determined as follows:**

**(a)  Except as otherwise provided in division (C)(3)(b) of this section, if the drug involved in the violation is methamphetamine, illegal manufacture of drugs is a felony of the second degree[.] * * ***

**(b)  If the drug involved in the violation is methamphetamine and if the offense was committed in the vicinity of a juvenile, in the vicinity of a school, or on public premises, illegal manufacture of drugs is a felony of the first degree[.] * * ***

Thus, the statute clearly sets forth that, where the drug involved in the violation is methamphetamine, illegal manufacture of drugs constitutes a second-degree felony. The verdict form for Count One clearly set forth that the drug involved was methamphetamine. Therefore, we find that the form was adequate and sustain Mobley's conviction for a second-degree felony offense on Count One.

{¶41} Conversely, the verdict form for Count Two provided that the jury found Mobley "GUILTY of Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, as he stands charged in COUNT II of the Indictment," without any reference to methamphetamine. R.C. 2925.041 governs this offense, providing, in pertinent part:

**(A)  No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.**
**\* \* \***
**(C) Whoever violates this section is guilty of illegal assembly or possession of chemicals for the manufacture of drugs. Except as otherwise provided in this division, illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the third degree, and, except as otherwise provided in division**

**(C)(1) or (2) of this section, division (C) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender. If the offense was committed in the vicinity of a juvenile or in the vicinity of a school, illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the second degree[.]**

{¶42} Here, the verdict form did not state that the offense charged was a felony of the second degree, nor did the form reflect a jury finding of the aggravating factor of being committed in the vicinity of a juvenile or a school.[2] Consequently, pursuant to R.C. 2945.75, *Pelfrey*, and *Sessler*, we find that the jury found Mobley guilty of the least offense of illegal assembly or possession of chemicals for the manufacture of drugs: a felony of the third degree as provided in R.C. 2925.041(C).

{¶43} Accordingly, we overrule Mobley's third assignment of error as it pertains to Count One, but sustain his argument regarding Count Two. Had prejudice resulted from this error, we would normally reverse Mobley's conviction for Count Two as charged, and remand with instructions for the trial court to enter a judgment convicting Mobley of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(C), a felony of the third degree. However, because the trial court found that Count Two was an allied

---

[2] We note that the indictment and bill of particulars do not set forth either of these aggravating factors, there was no evidence presented at trial on these factors, and the factors were not listed in the jury instructions. Because of this, we hypothesize that the State mistakenly charged this offense as a felony of the second degree instead of a felony of the third degree. However, this clerical error in the indictment is immaterial because our disposition finds any error was harmless.

offense to Count One, the State elected to proceed on Count One as opposed to Count Two, and because the trial court only sentenced Mobley on Count One and not on Count Two, we find that the trial court's error was harmless.

{¶44} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J., and WILLAMOWSKI, J., concur.**

**/jnc**